OPINION
Defendant — appellant Herman Eubanks ("appellant") appeals from his conviction for aggravated murder with a gun specification.
Appellant assigns the following errors for review:
 I. THE TRIAL COURT ERRED BY FAILING TO GIVE AN INSTRUCTION OF VOLUNTARY MANSLAUGHTER TO THE JURY.
 II. THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S MOTION FOR MISTRIAL.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO REDACT CERTAIN PORTIONS OF APPELLANT'S TAPE RECORDED STATEMENT TO POLICE WHICH AMOUNTED TO EVIDENCE OF OTHER ACTS.
 IV. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. THE CONVICTION SHOULD BE REVERSED BECAUSE THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
Appellant has raised the following supplemental assignments of error, pro se.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND PLAIN ERROR BY ALLOWING THE PROSECUTION OF THE DEFENDANT TO PROCEED WHILE KNOWING THE STATE HAD DESTROYED THE CRIME SCENE AND EXCULPATORY EVIDENCE.
 II. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On September 20, 1996, Cleveland police went to 2650 East 93rd Street in response to a call regarding a shooting at that address. Officer McPike observed an unconscious woman in an ambulance outside the residence. Upon entering the home, Officer McPike noticed blood on the couch and floor in the living room. Two spent shell casings were on the floor and one live round of ammunition was located in a hallway leading to the living room. No one was there at first but the victim's children soon arrived on the scene.
At about 8:00 p.m., the daughters of victim Lanita Eubanks were upstairs in their home. Seventeen-year old Alisha Carpenter was in her mother's bedroom, braiding the hair of her friend, Kisa Williams. Alisha Carpenter's sixteen-year old sister, also named Lanita, stood in the upstairs hallway, ironing. Alisha Carpenter heard appellants truck arrive at the home. None of the girls heard any conversation, fighting, or yelling between appellant and Lanita Eubanks, appellant's wife. Appellant walked up the stairs and past Lanita Carpenter in the hallway. Appellant entered the bedroom where Alisha Carpenter and Kisa Williams were. He took a gun case from under the dresser. Appellant placed the gun case on the bed and removed a rifle. Appellant left the bedroom carrying the rifle and went downstairs. Appellant never spoke to any of the girls. Three gunshots were heard by the girls. Alisha Carpenter heard appellant say "Now thats what you get." Kisa Williams and Alisha Carpenter briefly hid in a closet in Alisha's bedroom. They heard appellant return back upstairs to Lanita Eubanks' bedroom, then go downstairs and outside to his truck.
The three young women went downstairs. Lanita Eubanks had fallen back on the couch where she had been seated. Lanita Carpenter saw blood on her mother's abdomen and tears in her eyes. Alisha Carpenter called 911 before the girls left the house to obtain assistance from their neighbors.
Thirty-two year old Lanita Eubanks died from two gunshot wounds which penetrated the left side of her trunk. She also was shot in her right knee. At the time of her death, Lanita Eubanks had a blood alcohol level of .21. The coroner also discovered marijuana in her system.
The rifle used in the shooting was brought to detectives in the Homicide Unit of the Cleveland Police by a co-worker of appellant. Appellant gave the gun to his fellow worker before leaving for the bus station.
On September 23, 1996, Cincinnati police arrested appellant after receiving information from Cleveland police that appellant might be in the area. While in the custody of the Cincinnati police, appellant made a tape-recorded statement.
In his statement, appellant admitted shooting his wife. Appellant related to the Cincinnati detectives that Lanita Eubanks told appellant she had an affair with a doctor to obtain money for their rent. This occurred a little over a week before the shooting. Appellant stated that, although he did not like the idea of his wife being with another man, he appreciated her efforts to raise money for the rent. Lanita Eubanks later changed her story by informing appellant that the man was not a doctor but a security guard at the Cleveland Clinic. Appellant learned from his eleven year old son that Lanita Eubanks actually was having an affair with a neighborhood mechanic named Touche. Appellant stated he confronted his wife about the affair almost a week before the murder. She did not deny the relationship and expressed a desire to see Touche again.
On the day of the shooting, Lanita Eubanks drove appellant to work where appellant was employed as a delivery man. Appellant called the house numerous times that day before finally contacting his wife about picking him up from work. Lanita Eubanks said that she was planning to attend a dance at Alcoholics Anonymous that evening with her sister. Appellant surmised that his wife was actually intending to meet with Touche as he could tell she had been drinking from their telephone conversation. Shortly before 8:00 in the evening, appellant spoke to step-daughter Lanita Carpenter who stated that her mother and young cousin had gone somewhere. Appellant believed his wife had gone to Touche's home. Appellant drove his company's truck home with the intention of intervening in the affair.
Arriving at his home, appellant saw his son, Herman, outside in the yard. The boy told appellant Touche had been there that day and Lanita Eubanks kissed and touched the man in front of Herman. Appellant stated that his blood was at a low boil at the news of his spouse's deception. Appellant entered the house where his wife sat on the living room couch. Lanita Eubanks asked appellant if he had spoken to their son. Appellant replied that he had. Lanita Eubanks asked what Herman had said. From the tone of her voice, appellant had the impression that Lanita Eubanks wanted Herman to see her with Touche so that Herman would tell appellant. In retrospect, appellant believed his wife's intention was to provoke appellant into hitting or cursing at her so she could charge him with domestic violence.
Appellant never responded to Lanita Eubanks. Appellant stated he went into "lock and load" which is his attack mode. Appellant said that, at that point, he was through with conversation and was at "war." Appellant went upstairs and retrieved the rifle before returning downstairs. Appellant jammed the first round in the guns chamber. Appellant succeeded in ejecting that round of ammunition. Appellant then fired three shots at Lanita Eubanks.
He knew two of the bullets struck his wife but was not sure if the third round hit Lanita Eubanks.
Appellant went back upstairs for the gun case and then left in the truck. Appellant returned to his place of employment where he turned in the money which he collected that day making deliveries. Appellant gave the rifle to a co-worker after saying he had just killed his wife. Appellant went to the bus station and took a bus to Cincinnati.
 II.
In his first assignment of error, appellant contends the trial court erred by refusing to charge the jury on the inferior-degree offense of voluntary manslaughter. Appellant submits that he was entitled to an instruction on voluntary manslaughter because the evidence admitted at trial reasonably supported an acquittal on the aggravated murder charge and a conviction for voluntary manslaughter. The evidence appellant relies upon to support his argument is that, upon appellant's arrival at his home, his son informed appellant that his mother was touching and kissing Touche earlier in the day. Appellant argues that this information finally confirmed that his wife was unfaithful with the neighborhood mechanic. Appellant asserts that his wife's inquiry asking if appellant had spoken to their son humiliated him and sent appellant into a sudden rage.
A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. State v. Willifford (1990), 49 Ohio St.3d 247. Jury instructions should be tailored to fit the facts of each case.Avon Lake v. Anderson (1983), 10 Ohio App.3d 297. The trial court must give an instruction on a lesser-included offense or an inferior-degree offense when the evidence adduced at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense or the inferior-degree offense. State v. Shane (1992), 63 Ohio St.3d 630. Voluntary manslaughter is an inferior-degree offense of aggravated murder and murder. State v. Rhodes (1992), 63 Ohio St.3d 613, 617. An inferior-degree offense is one in which the elements of the offense are contained within the higher-degree offense but additional mitigating elements are present in the inferior-degree offense. See State v. Cornett (1992), 82 Ohio App.3d 624, 631.
R.C. 2903.03(A) defines voluntary manslaughter as knowingly causing the death of another while under the influence of a sudden passion or in a sudden fit of rage which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. A jury must find a defendant guilty of voluntary manslaughter rather than aggravated murder or murder if the prosecution proves, beyond a reasonable doubt, that the defendant knowingly caused the victims death, and if the defendant establishes, by a preponderance of the evidence, the existence of a mitigating circumstance. Rhodes, supra, at 617. Therefore, the defendant has the burden of producing evidence relating to the existence of a mitigating circumstance in order for the jury to consider voluntary manslaughter as an inferior-degree offense of aggravated murder. In addition to the burden of production, the defendant also has the burden of persuasion which means the defendant must establish the existence of a mitigating circumstance. Id.
In Shane, supra, the defendant woke his fiancee and repeatedly asked her questions to try to elicit an admission of infidelity. When the victim finally admitted to being unfaithful, Shane lost control and strangled the victim. The court held that mere words, even those relating to adultery, are not sufficient provocation to incite the use of deadly force. Id. at paragraph two of the syllabus. The court explained:
 Words informing another of infidelity should not be given special treatment by courts trying to determine what provocation is reasonably sufficient provocation. The killing of a spouse (usually a wife) by a spouse (usually a husband) who has just been made aware of the victim spouses adultery simply is not an acceptable response to the confession of infidelity.
Id. at 637. The trial court must determine, as a matter of law, whether evidence of reasonably sufficient provocation caused by the victim is present in the case to warrant a voluntary manslaughter instruction. Id. First, the trial court must apply an objective standard to determine if the provocation was reasonably sufficient to have brought on a sudden passion or sudden fit of rage. If the answer is in the affirmative, then a subjective standard is used to determine if that defendant was actually under the influence of the sudden passion or fit of rage. Id. at 634. In Shane, the court determined that the confession of infidelity was not a serious provocation which satisfied the objective standard. An instruction on voluntary manslaughter was not required based upon these facts.
The facts in the instant case are less favorable to an instruction of voluntary manslaughter than those found in Shane. Unlike Shane, appellant knew of his spouse's alleged infidelity for approximately a week before the murder. At first, appellant even accepted the notion of his wife's adultery as long as it helped pay the rent. Even accepting appellant's version of his conversation with his son, appellant was told of some kissing and touching but not anything directly about a sexual encounter. Further, Lanita Eubanks' alleged statements to appellant contained nothing overtly relating to her affair. Even if Lanita Eubanks had said something pertaining to appellant regarding an affair, under the holding ofShane, this still would have been insufficient to justify an instruction on voluntary manslaughter.
Also, the jury received instructions on aggravated murder and murder, and chose to convict appellant of the greater offense of aggravated murder. The jury obviously found appellant purposely killed Lanita Eubanks with prior calculation and design as the jury rejected the lesser charge of murder. There is little, if any, likelihood the jury would have acquitted appellant of aggravated murder and murder but convicted him of voluntary manslaughter. The trial court correctly denied appellant's request for a jury charge on the offense of voluntary manslaughter.
Appellant's first assignment of error lacks merit.
 III.
Appellant's second assignment of error challenges the trial courts denial of his motion for a mistrial. Appellant made the motion following some testimony by the victim's daughter, Alisha, in which she referred to earlier incidents when appellant had used a firearm in the residence.
The testimony in issue was as follows:
 Q. At the time you heard the gunshots, what were you feeling, or what did you do, or
 A. At the time I didn't think he shot her, because I didn't hear her scream, or nothing like that. So I didn't think he shot her.
 Q. You didn't hear your mom scream; is that what your (SIC) said?
A. Yes.
 Q. So you didn't think that he had shot her, even though you heard the gunshots?
 A. I thought maybe he shot something in .the house, "cause he done shot a couple of things in the house before that.
 Q. Okay. So Herman shot up things in the house before that day; is that correct?
A. Yes.
 Q. Did he use that same gun when he shot up things in the house before, or a different gun?
A. A different gun.
Q. A pistol or a rifle before?
A. A pistol.
 Q. What things did he shoot up in the house before?
 A. The walls, and one day he shot at my cousin in front of our house.
Q. He shot the walls?
A. Um-hum.
Q. And he shot your cousin?
A. He didn't shoot him, he was shooting at him.
(Tr. 383-384.) At that point, the defense objected to the testimony and requested a mistrial. After hearing argument on the motion, the trial court denied the defense's request for a mistrial and gave a curative instruction to the jury. The testimony was stricken from the record.
The decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court. State v. Sage
(1987), 32. Ohio St.3d 173, 182. This is because the trial court is in the best position to determine whether a mistrial is needed.State v. Glover (1988), 35 Ohio St.3d 18, 19. In order to demonstrate that a trial court has abused its discretion in denying a motion for a mistrial, a defendant must show that the trial courts decision was arbitrary, unreasonable, or unconscionable.State v. Nichols (1993), 85 Ohio App.3d 65, 69. A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected. Id. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118,127.
Evid.R. 404(B) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a defendant. This rule of evidence is not applicable if the objectionable statements are not admitted into evidence. State v. Triplett (Nov. 26, 1997), Cuyahoga App. No. 71921, unreported.
The statements made by Alisha Carpenter raise the possibility of unfair prejudice to appellant. Appellant argues that the knowledge he previously fired a weapon in the house and at another person negated his defense that the killing of his wife was an isolated incident stemming from extreme provocation.
The trial court did issue curative instructions to the jury to disregard the statements by Alisha Carpenter. The jury was instructed not to consider the information for any purpose. Curative instructions are presumed to be effective. State v. Zuern
(1987), 32 Ohio St.3d 56. An appellate court generally will presume that a jury followed a trial court's curative instruction.State v. Ferguson (1983), 5 Ohio St.3d 160, 163.
Although the prosecutor clearly should have ceased this line of questioning after the first nonresponsive answer by Alisha Carpenter, the statements alone were not so prejudicial to appellant as to deny him a fair trial. Alisha Carpenter did not indicate that any of the earlier incidents were directed specifically at her mother. There was no evidence appellant injured anyone by firing a pistol. This isolated evidence did not deny appellant a fair trial when considered against the overwhelming evidence that appellant intentionally shot to death Lanita Eubanks without sufficient provocation.
Appellant's second assignment of error is Overruled.
 IV.
In his third assignment of error, appellant contends the trial court committed plain error by failing to redact certain portions of appellant's confession. Appellant requested the trial court redact parts of his taped-recorded confession following the testimony of Alisha Carpenter already discussed in the previous assignment of error.
The admission or exclusion of evidence lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. State v. Sage (1987), 31 Ohio St.3d 173. An abuse of discretion connotes an attitude by the trial court that was arbitrary, unreasonable, or unconscionable. State v. Long (1978),53 Ohio St.2d 91, 98. Furthermore, a conviction will not be reversed unless it appears from the record that the trial court's discretion had been abused to the material prejudice of the defendant. State v. Hymore
(1967), 9 Ohio St.2d 122.
At trial, the defense requested that the trial court redact portions of his taped-recorded confession. Prior to the commencement of trial, appellant withdrew his motion to suppress the statement. After the testimony of Alisha Carpenter, the defense contended that, because of the statements made by Alisha Carpenter, certain parts of the confession were prejudicial to appellant and should be deleted. Defense counsel argued that the references to appellant and his wife filing numerous complaints about domestic violence against each other, appellant's "lock and load" mind set, and appellant's belief that it is simpler to kill someone with a gun than by a beating were too prejudicial to be heard or considered by the jury. The entire statement was admitted by the trial court.
Appellant's defense was predicated upon the provocation caused by his wife's infidelity. Appellant argued that Lanita Eubanks purpose in asking if appellant had spoken to their son was to provoke appellant into an act of violence against her. Lanita Eubanks could then use the violent act to cause appellant to be removed from their home so she could carry on her affair with ease. In his statement, appellant buttressed this argument with the alleged past acts of domestic violence of both appellant and his wife. Appellant told the police Lanita Eubanks knew how to make a police report which would cause appellant to leave the house.
Nothing in this testimony or in the references to appellant's state of mind really was affected by the statements made in court by Alisha Carpenter. Appellant's prior use of a pistol in the house to shoot the walls and, apparently, in the direction of Alisha Carpenter's cousin, were irrelevant to his use of a rifle to kill his wife. Obviously, the jury knew appellant kept at least one weapon, the rifle, in the house. There were no statements made to the effect that appellant ever used a weapon against Lanita Eubanks in the alleged acts of domestic violence. Instead, appellant's statement indicated instances of swearing, threats, verbal abuse, and physically striking Lanita Eubanks. Determinations of relevancy and impact on the jury are best decided by the trial court. Renifro v. Black (1990), 52 Ohio St.3d 27.
The most damaging part of appellant's confession was his statement regarding his "lock and load" attitude which meant appellant considered himself to be past the point of discussion and in a state of war. However, the thrust of appellant's defense was his state of mind at the time of the murder. This statement is directly relevant to this issue. In his statement, appellant asserted that this attitude was in direct response to his wife's actions. Therefore, the statement's relevance outweighed any prejudice to appellant. Also, appellant's prior use of a pistol did not have a significant impact on his statement that it is simpler and faster to "take a person out" by using a gun than beating them to death. Appellant stated that Lanita Eubanks made him so angry that he wanted to take her out. The jury was well aware of the way in which appellant chose to carry out his intention. Appellant was not prejudiced by the inclusion of these portions of his tape-recorded confession.
Appellant's third assignment of error lacks merit.
 V.
Appellant's fourth assignment of error challenges the weight of the evidence admitted which supported the element of prior calculation and design. Appellant submits that the evidence adduced at trial showed that upon his arrival home, appellant learned that his wife had been kissing and fondling another man which caused him to react violently over a short span of time. Appellant contends the evidence does not reflect that he acted with prior calculation and design in killing Lanita Eubanks.
When reviewing a challenge to the weight of the evidence, the test is whether, after reviewing the entire record and probative evidence and the inferences reasonably drawn from the evidence, the court determines that the trier of fact clearly lost its way when resolving conflicts in the evidence and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172,175. It is the trier of fact who is best able to weigh the evidence and pass on the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230. Only if reasonable minds could not fail to find reasonable doubt of a defendant's guilt will an appellate court reverse a conviction as being against the manifest weight of the evidence. State v. Thomas (1982), 70 Ohio St.2d 79. An appellate court will review the evidence to determine if the greater amount of credible evidence offered at trial supports one side of the issue rather than the other. State v. Thompkins
(1997), 78 Ohio St.3d 380.
R.C. 2903.01(A) provides that:
 No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.
Anyone violating this statute is guilty of aggravated murder. R.C.2903.01(C). "Prior calculation and design" is not defined in the Revised Code. The phrase has been interpreted to require proof of more than the few moments of deliberation permitted in common-law interpretations of the former murder statute. A scheme is required which implements the calculated decision to kill. Instantaneous deliberation is not sufficient. State v. Cotton (1978), 56 Ohio St.2d 8. However, "neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but momentary deliberation is insufficient."State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 196. Factors to consider when determining whether the circumstances surrounding a homicide show a scheme designed in furtherance of a calculated decision to kill include (1) whether the accused and the victim knew one another prior to the killing, and, if so, the nature of their relationship, (2) whether the accused gave any thought or preparation to the method or place of the killing, and (3) whether the events occurred over time or almost instantaneously. State v.Jenkins (1976), 48 Ohio App.2d 99, 102. Findings of prior calculation and design have been upheld in some short-lived emotional situations. No bright-line test is possible in determining whether prior calculation and design is present in a case. Each case turns on the particular facts and evidence presented at trial. State v. Taylor (1997), 78 Ohio St.3d 15.
Although appellant asserts the events unfolded rapidly and in response to discovering his wife had been with another man that day, adequate evidence was admitted at trial to support a finding of prior calculation and design. Appellant did not discover Lanita Eubanks' infidelity on the day of the murder. He knew of the situation for well over a week. Even if appellant had first learned of his wife's indiscretions that day, no spontaneous eruption of events occurred. After his wife's two statements to appellant, he left the living room and walked upstairs. There, appellant entered the bedroom, retrieved the rifle from underneath the dresser and removed the weapon from its case. Appellant returned to the downstairs level of the home and jammed the rifle when first attempting to fire. After appellant cleared the weapon, he fired three rounds at Lanita Eubanks, killing her. Appellant's actions were deliberate and indicate a calculated decision to kill.
Appellant's fourth assignment of error is meritless.
 VI.
In his fifth assignment of error, appellant argues he was denied effective assistance of counsel. Appellant bases his contention on his attorney's failure to object to the testimony of Alisha Carpenter that appellant fired a pistol in the house on previous occasions. Appellant argues that, because defense counsel allowed six questions on the subject to be asked before objecting, he was prejudiced because the evidence was indicative of prior calculation and design.
To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1987), 36 Ohio App.3d 162. Ineffectiveness is demonstrated by showing that counsels errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. State v. Hamblin (1988), 37 Ohio St.3d 153. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland, supra. at 694.
Appellant argues that he only could negate a finding of prior calculation and design by showing that there was no evidence appellant previously used a firearm when angry. Appellant even submits that the statements by Alisha Carpenter were the only evidence the prosecution could rely upon to support the element of prior calculation and design. A review of the record fails to show that the prosecution ever referred to appellant's prior use of a weapon in the home after the initial responses by Alisha Carpenter. This court already has found that adequate evidence was admitted at trial to support a finding of prior calculation and design without any reliance on this excluded evidence.
Appellant cannot show that his counsel's performance at trial was deficient or that he was prejudiced by his attorney's failure to object to the inadmissible testimony in a more timely manner. The record shows that appellant's trial counsel provided adequate representation.
Appellant's fifth assignment of error is overruled.
 VII.
In appellant's first supplemental assignment of error, appellant argues that the trial court committed error by allowing appellant's trial to continue after appellant claimed the state concealed exculpatory evidence and destroyed the crime scene. Appellant filed a motion asking that certain property be returned to him which he believed was seized by the police from his home. Those items were deeds, rent receipts, titles, canceled checks, bank statements, letters, tax records, appellant's diary, notebooks, payment books, and insurance policies. Appellant also filed numerous pro se motions below in which he claimed that a Cleveland police officer, the victim's sister, destroyed the crime scene along with removing the aforementioned property. Appellant further asserted that his various appointed defense counsel were in collusion with the prosecutor to conceal the actions-of the officer. Appellant claimed the murder was staged by his wife because she wanted to die. Appellant stated in one of his motions below that Lanita Eubanks chose to die by his hand because she believed, that if she committed suicide, she could not ascend to heaven or have her family collect the proceeds of an insurance policy.
Nowhere in appellant's motions or appellate brief does he explain how the alleged missing property was exculpatory in nature or in what manner the crime scene was destroyed. Appellant admitted killing his wife and gave a statement as to what transpired that evening. Appellant's suicide theory is patently absurd as are his claims of conspiracy.
Even if appellant's nonsensical assertions regarding missing property and destruction of the crime scene were true, appellant has failed to demonstrate prejudice. Appellant confessed to murdering his wife in cold-blood. The production of the various documents and papers alleged to be missing do not change the intent or result of appellant's actions on September 20, 1996.
Appellant's first supplemental assignment of error is overruled.
 VIII.
Appellant's second supplemental assignment of error claims he was denied effective assistance of counsel because his attorney did not obtain the alleged missing exculpatory evidence. As stated above, appellant failed to demonstrate how these items would have aided his defense or how he was prejudiced by his defense counsel's performance at trial.
Appellant's second supplemental assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed) any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J. and
 ANNE L. KILBANE, J. CONCUR.
LEO M. SPELLACY, JUDGE.