Defendant-appellant Jesus Alex Ruiz ("appellant") appeals from his conviction for murder in violation of R.C. 2903.02 with a firearm specification.
Appellant assigns the following errors for review:
 I. THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT'S JUDGMENT IS NOT SUSTAINED BY SUFFICIENT EVIDENCE THEREBY DENYING APPELLANT DUE PROCESS OF LAW.
 III. THE TRIAL COURT'S REFUSAL TO CHARGE THE JURY ON MANSLAUGHTER DENIED APPELLANT DUE PROCESS OF LAW.
 IV. APPELLANT'S RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I. SECTION 16, OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WAS VIOLATED BY MISCONDUCT OF THE PROSECUTING ATTORNEY DURING CLOSING ARGUMENT.
 V. APPELLANT'S RIGHT TO A FAIR TRIAL WAS PREJUDICIALLY AFFECTED BY JURY INSTRUCTIONS ON ACCIDENT AND ACCOMPLICE.
 VI. APPELLANT WAS DENIED DUE PROCESS OF LAW IN THAT HE DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
The Cuyahoga County Grand Jury indicted appellant for one count of aggravated murder in violation of R.C. 2903.01 for the June 15. 1997, shooting death of seventeen-year old Christopher Blair. The indictment also charged appellant with two firearm specifications in violation of R.C. 2941.141 and R.C. 2941.145. On October 28, 1997, appellant's jury trial commenced.
Dr. Carlos Santoscoy, Jr. testified that he performed the autopsy on Christopher Blair. Blair died from a bullet fired into the upper left side of his back which exited from his chest. This was a contact wound, meaning the muzzle of the gun was against Blair's skin at the time the gun was fired. Blair also suffered from a graze gunshot wound to his right hand. Although Dr. Santoscoy could not definitively state Blair was wounded from two separate gunshots, he thought this most likely given the position Blair's hand would have had to been in to be wounded from the bullet as it exited Blair's chest. Dr. Santoscoy stated Blair would not have died instantly but in a matter of minutes from loss of blood.
The events leading to the death of Christopher Blair began with a neighborhood dispute, the origins of which were conflicting at trial. Fifteen-year old Deborah Summers testified that on June 15, 1997, she was with Blair on Meyer Avenue near West 34tb Street. Summers and Blair were discussing going on a date that evening when a Puerto Rican boy rode by on a bicycle. Blair made a racial slur to which the boy responded. A car pulled up and five males, including appellant, emerged. The men asked the Puerto Rican boy if the white boy had a problem with him. Blair denied having a problem and all but appellant returned to their vehicle. Appellant and Blair continued their verbal altercation until Blair punched appellant. The other men from the car joined in the fray until Blair ran with appellant giving chase. Summers lost sight of the men when they went around the corner. Summers heard a sound like a firecracker before she reached the corner. Summers saw appellant put a gun into his waistband and run away. Blair walked a short distance before falling. Appellant and the other males returned to the car.
Eight-year old Thomas Bailey testified that he witnessed the fight between Blair and appellant. Bailey had been buying candy in the corner store with his brother and a friend. As he left the store, Bailey saw Blair and appellant fighting across the street. Bailey recognized appellant from seeing appellant in the neighborhood on previous occasions. Appellant was memorable because he was the only person Bailey had seen who only had one ear. Bailey testified that appellant came out of a car. Appellant and Blair were swearing at each other before Blair swung at appellant, missing appellant with the blow. Then the physical fight began in earnest. Three other boys came out of the car which appellant had been in and joined in the fight. The men kept hitting and kicking Blair. Blair tried to run away when appellant shot Blair in the back. Blair fell but stood up and tried to run again when appellant fired a second time. Bailey stated the second shot also was aimed at Blair's back. Blair fell to the ground again and did not get up. Bailey testified that the gun was not touching Blair's back at the time either shot was fired. Bailey did not see anyone else with a gun.
Ten-year old Matthew Hammock is Bailey's brother. Hammock testified that he observed appellant and a group of other people fighting one person. Hammock saw appellant take the gun from his shirt and point it at Blair who was walking away from appellant. Blair was approximately fifteen feet from appellant when appellant fired his gun at Blair. Blair walked for a minute before falling. Hammock's police statement said he heard two shots but, at trial, Hammock thought the second noise may have been fireworks. Hammock did not see anyone get into a car but stated that appellant escaped by jumping on a bicycle.
Samuel Antonio testified he witnessed the fight on June 15, 1997. Antonio parked his car on the street when he saw a boy stumble over from the corner. Antonio saw appellant and three other boys beating the first boy. Antonio did not recognize the other boys but his attention was on appellant, whom Antonio knew. Antonio opened his car door and heard a gunshot. Antonio first thought the victim had fired the gun but Antonio saw the victim get up and observed a black patch on the victim's back. The victim was holding his chest and blood was on his hand. Appellant was hysterical, still hitting and cursing the victim. Antonio never saw a gun and he soon left the scene to avoid involvement.
Twelve-year old Ricky Blair testified that he is the brother of Christopher Blair. Ricky saw his brother in the late afternoon on the day of the shooting. Christopher Blair was talking with Debbie. Appellant came down the street and stated he liked Christopher Blair's shoes and asked Blair for the shoes. Appellant also began saying things to Debbie until Christopher Blair told appellant to shut up. Appellant again asked for Blair's shoes when Christopher Blair jumped up and began fighting with appellant. Appellant was knocked down. Four other people came from a car and joined in the melee. Appellant was struck in the mouth by Blair, drawing blood. Appellant backed up. took a gun from his shirt, placed the gun against Blair's back and fired. Blair was bent over at the time. The others involved in the fight ran away. Christopher Blair got up and tried running home. Appellant turned around and pulled the gun's trigger a second time. Blair fell to the ground again.
Juan Perez testified that he saw appellant later that day at a Father's Day party. Appellant seemed nervous and spoke about a shooting. Appellant told Perez that the first shot he fired was accidental but Perez thought appellant stated that the second shot "meant business."
Andre Cury also observed the fight on Father's Day. Cury stated he saw five men chasing a white guy. The victim knocked three of his assailants down. The victim ran but was soon surrounded by the five others. The victim fell and was trying to get up when he was kicked in the face. Appellant hit the victim on the back of the head with the gun while Blair was on his hands and knees. Appellant swung the gun again and Cury heard the gun fire. The victim grabbed his back. The second blow had been to the back of Blair's head. Appellant ran away after the shooting.
Appellant testified in his own defense. Appellant stated that he was walking to the store with his girlfriend when he saw some people get out of a car and begin fighting with Blair. Appellant stopped to watch when Blair hit appellant in the mouth. Appellant was knocked to the ground causing his gun to fall from appellant's waistband. Appellant picked the gun up and struck Blair with it twice. Both blows were aimed at Blair's back. The gun discharged the second time appellant hit Blair. Appellant averred he never pulled the gun's trigger. Appellant denied pressing the gun into Blair's back.
The jury acquitted appellant of the aggravated murder charge but found appellant guilty of murder and the firearm specification. The trial court sentenced appellant to a term of fifteen years to life plus three years for the firearm specification.
 II.
Appellant's first assignment of error asserts that his conviction was against the manifest weight of the evidence. Appellant points out that many of the state's witnesses testified that appellant fired the gun from varying distances although the pathologist testified Blair died from a contact wound. Appellant avers that his testimony was consistent with this physical evidence that the gun fired when he hit Blair on the back with it. Appellant argues that only his testimony was reliable and, because appellant stated he used the gun as a bludgeon, he could not have been convicted of purposefully causing Blair's death.
When reviewing a challenge to the weight of the evidence, the test is whether, after reviewing the entire record and probative evidence and the inferences reasonably drawn from the evidence, the court determines that the trier of fact clearly lost its way when resolving conflicts in the evidence and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172,175. It is the trier of fact who is best able to weigh the evidence and pass on the credibility of the witnesses. State v.DeHass (1967). 10 Ohio St.2d 230. Only if reasonable minds could not fail to find reasonable doubt of a defendant's guilt will an appellate court reverse a conviction as being against the manifest weight of the evidence. State v. Thomas (1982), 70 Ohio St.2d 79. An appellate court will review the evidence to determine if the greater amount of credible evidence offered at trial supports one side of the issue rather than the other. Statev. Thompkins (1997), 78 Ohio St.3d 380.
RC. 2903.02 (A) defines murder as purposefully causing the death of another. R.C. 2901.22 (A) states:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Intent lies within the privacy of a person's own thoughts and is not susceptible to objective proof. State v. Garner (1995),74 Ohio St.3d 49, 60. The Supreme Court of Ohio recently stated inIn re Washington (1998), 81 Ohio St.3d 337, 340:
 "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It may be gathered from the surrounding facts and circumstances under proper instructions from the court." State v. Huffman (1936), 131 Ohio St. 27
* * * paragraph four of the syllabus.
One of the surrounding circumstances used to show intent to kill is "the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." State v. Robinson (1954), 161 Ohio St. 213, paragraph five of the syllabus. A person is presumed to have intended the natural, reasonable, and probable consequences of his voluntary acts. State v. Carter (1995), 72 Ohio St.3d 545,554. The element of purpose may be inferred where the natural and probable consequence of a wrongful act is to produce death. SeeSandstrom v. Montana (1979), 442 U.S. 510, 515.
During trial, only appellant expressed any doubt that he fired the fatal shot, killing Christopher Blair. Appellant specifically stated he did not know if his gun was the cause of Blair's death or if he shot Blair. Appellant averred only one shot was fired. His gun fired when he used it to strike Blair on the back. Appellant responded to cross-examination as follows:
 Q. Okay, did you hear what the coroner testified to?
A. Yeah.
 Q. Did you put that hole in his back, State's Exhibit 6? See the photo?
A. I don't know.
 Q. Did you hear what the coroner testified to that that gun had to be right down on top of his back at his skin?
A. Yeah, I hear that.
Q. For that hole to have been put there?
A. I hear that.
 Q. You're not the one that did that, is that correct?
A. No.
(Tr. 687). Appellant's testimony was not consistent with the physical evidence much less being the only evidence which was consistent with the coroner's testimony.
The coroner testified that Blair suffered two gunshot wounds. The fatal wound was located in Blair's back and was a contact wound meaning the muzzle was against the skin when fired. The second gunshot wound was a graze wound to the hand. Although the coroner did not completely discount the possibility that the graze wound happened when the bullet causing the back wound exited Blair's chest, the coroner thought this to be unlikely because of the position the hand would have had to have been in at the time of wounding.
The testimony of the witnesses did differ as to how far away appellant and Blair were from each other at the time Blair first was shot and whether one or two shots were fired. This is hardly unusual under the circumstances and any discrepancies are for the jury to resolve. There was competent evidence admitted at trial supporting the state's contention that appellant fired at Blair twice that day. The strongest evidence showing that two shots were fired was the testimony of the coroner discussed above. There also was evidence the first shot was fired while appellant and Blair were physically fighting but appellant fired the second shot, causing the graze wound, at a fleeing Blair. The second shot certainly is indicative that this was a purposeful shooting. Further, the coroner averred that the muzzle left an imprint on Blair's skin, meaning it was directly against Blair's skin when the gun was fired. Appellant testified he did not put the gun right down on Blair's back, a statement contradicted by the physical evidence.
There was ample evidence adduced at trial of such quality supporting appellant's conviction that no miscarriage of justice is found in the instant case.
Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant submits that his conviction is not sustained by sufficient evidence. Appellant then incorporates the same argument raised above.
Sufficiency is a legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra.
A review of the evidence in the instant case shows that sufficient evidence was admitted showing appellant purposefully shot Christopher Blair, causing Blair's death. As discussed above, there was strong evidence two shots were fired, there was some witness testimony appellant aimed at Blair when firing, and there was testimony appellant made statements admitting he purposefully fired at least the second shot.
Appellant's second assignment of error lacks merit.
 IV.
In his third assignment of error, appellant contends he was denied due process by the trial court's refusal to instruct the jury on voluntary manslaughter. Appellant argues that there was evidence adduced at trial supporting a charge on voluntary manslaughter. Appellant points to the testimony of Deborah Summers that the fight began after Christopher Blair used a racial epithet which led to a verbal confrontation between Blair and appellant. Blair then struck appellant in the nose and mouth before appellant used his gun. Appellant maintains that the jury could have found appellant did not intend to kill Blair but responded to Blair's verbal and physical provocation by using a loaded gun while in a rage.
A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. State v. Willifford (1990), 49 Ohio St.3d 247. Jury instructions should be tailored to fit the facts of each case. Avon Lake v. Anderson (1983), 10 Ohio App.3d 297. The trial court must give an instruction on a lesser-included offense or an inferior-degree offense when the evidence adduced at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense or the inferior-degree offense. State v. Shane (1992), 63 Ohio St.3d 630. Voluntary manslaughter is an inferior-degree offense of aggravated murder and murder. State v. Rhodes (1992), 63 Ohio St.3d 613, 617. An inferior-degree offense is one in which the elements of the offense are contained within the higher-degree offense but additional mitigating elements are present in the inferior-degree offense. See State v. Cornett (1992), 82 Ohio App.3d 624, 631.
R.C. 2903.03 (A) defines voluntary manslaughter as knowingly causing the death of another while under the influence of a sudden passion or in a sudden fit of rage which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. A jury must find a defendant guilty of voluntary manslaughter rather than aggravated murder or murder if the prosecution proves, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant establishes, by a preponderance of the evidence, the existence of a mitigating circumstance. Rhodes, supra, at 617. Therefore, the defendant has the burden of producing evidence relating to the existence of a mitigating circumstance in order for the jury to consider voluntary manslaughter as an inferior-degree offense of aggravated murder. In addition to the burden of production, the defendant also has the burden of persuasion which means the defendant must establish the existence of a mitigating circumstance. Id.
Appellant presented no evidence of a mitigating circumstance. Appellant testified that he and Blair never spoke to each other. Appellant denied ever hearing any racial slurs spoken by anyone either before or during the altercation. Appellant averred that Blair struck appellant once in the mouth when appellant strayed close to the fight between Blair and four black men. Appellant grabbed his gun from where it had fallen on the ground when Blair tried to hit him again. Appellant testified he only intended to hit Blair with the gun not shoot Blair. Appellant stated that he was a little angry at the time. Appellant specifically denied being very angry.
Appellant presented no evidence of any sort of sudden passion or rage brought on by a serious provocation caused by Christopher Blair. Appellant failed to meet his burden of establishing a mitigating circumstance. The trial court did not abuse its discretion by refusing to instruct the jury on voluntary manslaughter.
Appellant's third assignment of error is meritless.
 V.
In his fourth assignment of error, appellant asserts his conviction was prejudicially tainted by remarks made during the prosecutor's closing argument. Appellant specially points to the prosecutor's remarks that carrying a concealed weapon is a crime, that involuntary manslaughter would be found only if Blair had died because of head injuries caused by being beaten with appellant's gun, and that appellant would be not guilty if his gun discharged by accident.
A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219. The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. Statev. Maurer (1984), 15 Ohio St.3d 239, 266.
The remarks to which appellant objects occurred during closing argument. The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.State v. Smith (1984), 14 Ohio St.3d 13, 14. A prosecutor is afforded wide latitude in closing arguments. State v. Jacks
(1989), 63 Ohio App.3d 200, 210. It is within the trial court's sound discretion to determine if a prosecutor has gone beyond the bounds permitted. State v. Benge (1996), 75 Ohio St.3d 136. A judgment will not be reversed if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would have found the defendant guilty. State v. Loza (1994), 71 Ohio St.3d 61,78. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v.Mann (1993), 93 Ohio App.3d 301, 312.
Appellant never raised objections to the prosecutor's closing argument. Any alleged improprieties in the prosecutor's remarks are waived absent plain error. See Crim.R. 52 (B); State v. White
(1998), 82 Ohio St.3d 16. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent the manifest miscarriage of justice. State v. Landrum
(1990), 53 Ohio St.3d 107, 111.
Appellant argues that the prosecutor's statement that it is a crime to carry a concealed weapon constituted prejudicial error. Appellant was not charged with carrying a concealed weapon. He contends that the prosecutor's remark instructed the jury that appellant had committed additional crimes for which no evidence was admitted at trial. There was ample evidence, including appellant's testimony, that appellant withdrew his gun from his clothing, either in his shirt or the waistband of his pants. The jury was well aware that appellant concealed the weapon on his person prior to the incident with Chris Blair. There is little, if any, indication appellant would not have been convicted but for this remark by the prosecutor.
Next, appellant asserts the prosecutor gave what amounted to an improper jury instruction on the elements of involuntary manslaughter. The prosecutor stated that appellant would be guilty of involuntary manslaughter if Christopher Blair died as a result of being struck in the head several times by appellant using his gun as a bludgeon. The trial court instructed the jury on the offense of involuntary manslaughter. The trial court also informed the jury that closing arguments are not to be considered as evidence and that the trial court would instruct the jury on the law to be applied. "The statements made by counsel in closing arguments do not govern the law that should be applied in this case." Loza, supra at 79. It is presumed that the jurors followed the trial court's instructions. Id.
Appellant also submits he was prejudiced by the prosecutor's statement that appellant would be absolved of any criminal culpability if the shooting was a result of an accident. Appellant avers he never requested an instruction on accident or ever argued that Blair's death was accidental. During closing argument, defense counsel reiterated appellant's testimony that appellant struck Blair in the back with his gun which then just went off. Defense counsel asked the jury to prevent two tragedies by finding appellant not guilty. This basically is argument that the shooting was the result of an accident which negated any criminal culpability on appellant's part. Appellant was not prejudiced by the prosecutor's statement essentially parroting the argument advanced by the defense.
Appellant's fourth assignment of error is overruled.
 VI.
In his fifth assignment of error, appellant contends he was prejudiced by the trial court's inclusion of instructions on accomplice testimony and accident in the jury charge. In regard to the accomplice testimony instruction, the trial court stated:
 I don't know how you're going to resolve it but there is some contention that an accomplice may have testified in this particular case. As it relates to the testimony of an accomplice, an accomplice's testimony does not become inadmissible because of his or her complicity, moral turpitude or self-interest, but if you find that any of the witnesses were an accomplice or could be an accomplice in this case, you should take that into consideration how his testimony may affect his credibility, how it may make his testimony subject to grave suspicion and require it be weighed with great caution. It is for you to evaluate such testimony and determine its quality and worth or lack of it.
(Tr. 773-774). Appellant argues that the prosecution tried to impeach their witnesses Samuel Antonio, Juan Perez, and Andre Cury and implied they were aligned with appellant in some fashion. Appellant points out that none of these men were indicted as accomplices in this case. Appellant maintains that, by giving this instruction to the jury without any direction as to how to identify an accomplice, the trial court aided the prosecution in impeaching the testimony of the witnesses. Appellant submits that an accomplice instruction would be warranted only if an accomplice or co-defendant had been called as a witness at appellant's trial.
Jury instructions must be considered as a whole. State v.Coleman (1988), 37 Ohio St.3d 286. Any ambiguity which may exist within the jury charge is eliminated when the instruction is properly considered as a whole. Id. A portion of the charge which may be improper or misleading will not be cause for a reversal if, when the jury instructions are viewed in their entirety, no prejudice resulted. State v. Porter (1968), 14 Ohio St.2d 10, paragraph two of the syllabus.
The jury instruction at issue occurred during the trial court's discussion of credibility determinations of various witnesses such as police officers and experts. Appellant is correct that none of the witnesses were indicted as an accomplice. The only witness who was implicated in any way was Antonio. There was some evidence Antonio was accused of driving the car from which Blair's assailants emerged and in which appellant fled after the shooting. Antonio denied he was the driver several times while testifying. Because no one who testified ever was accused by the prosecution of being an accomplice, the instruction was improper. However, when considered within the context of the jury charge as a whole, no prejudice is apparent to appellant. There was no denial that appellant shot Christopher Blair and there was ample evidence admitted at trial supporting a finding of purpose.
Appellant now objects to the instruction on accident. Appellant argues he did not raise a defense of accident or request such a charge be given. No objection to the accident instruction was raised at trial which precludes review of any claim of error short of plain error. See Crim.R. 30 (A). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. State v. Wickline (1990),50 Ohio St.3d 114, 120. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
Appellant's counsel made a motion for acquittal pursuant to Crim.R. 29 and stated: "There is plenty of evidence this was an accident, that there was one shot." (Tr. 632). Therefore, the defense did specifically raise the specter of the shooting being the result of an accident. Further, appellant's own testimony at trial was replete with references and explanations that the gun accidentally discharged when appellant struck Blair. The trial court committed no error by giving the accident instruction as the charge was based on evidence admitted at trial.
Appellant's fifth assignment of error is not well-taken.
 VII.
Appellant's sixth assignment of error challenges the effectiveness of the representation he received from defense counsel. Appellant asserts that his attorney did not properly preserve errors for appeal resulting in a plain error analysis being applied by this court. Appellant further argues that his attorney's closing argument was inadequate and his counsel failed to object to improper questions by the prosecutor.
To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1987), 36 Ohio App.3d 162. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. Statev. Hamblin (1988), 37 Ohio St.3d 153. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland, supra, at 694.
Appellant first contends defense counsel should have objected to the omission of a jury instruction on voluntary manslaughter. This court already has determined that such a charge was not warranted based on the evidence admitted at trial. Appellant also raises his counsel's failure to object to the trial court's instructions on accident and accomplice testimony. Defense counsel did argue against the inclusion of the charge on accomplice testimony in a sufficient enough manner to preserve the issue for appellate review. The instruction on accident was reviewed under the plain error standard but clearly there was no error in this charge as it was based on the evidence, particularly appellant's testimony.
Appellant maintains his attorney rendered ineffective assistance by not objecting to the prosecutor's closing argument or during the prosecutor's examination of witnesses. However, defense counsel may reasonably elect not to interrupt the prosecutor's closing argument. State V. McNeill (1998), 83 Ohio St.3d 438. This is because many lawyers recognize the wisdom of keeping objections to a minimum. State v. Keenan (1998), 81 Ohio St.3d 133;State v. Campbell (1994), 69 Ohio St.3d 38.
Appellant argues his counsel's closing argument was too brief, lacking clarity and substance. The substance of closing argument falls within the realm of trial strategy that should not be second-guessed on appeal. State v. Sharpless (Dec. 18, 1998), Portage App. No. 97-P-COGS, unreported. A review of the closing argument in question shows that defense counsel adequately pointed out the numerous inconsistencies in the testimony of the prosecution's witnesses, stated what evidence was not discovered by police or presented by the prosecution, questioned the reliability of some of the witnesses against appellant, and reiterated appellant's testimony that the shooting was unintentional because the gun fired when appellant struck Christopher Blair in the back. Defense counsel adequately represented appellant's interests in his closing argument.
Appellant was not prejudiced by his attorney's representation. Appellant received effective assistance of counsel at his trial.
Appellant's sixth assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and KENNETH A ROCCO, J. CONCUR.
 ______________________________ LEO M. SPELLACY JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of this court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).