The STATE of Ohio, Appellee,

v.

CORNETT, Appellant.

[Cite as *State v. Cornett* (1992), 82 Ohio App.3d 624.]

Court of Appeals of Ohio,
Butler County.

No. CA91–10–180.

Decided Sept. 28, 1992.

*John F. Holcomb,* Butler County Prosecuting Attorney, for appellee.

*Fred Miller,* for appellant.

Jones, Presiding Judge.

Defendant-appellant, Melvin Cornett, appeals his jury conviction for murder with a firearm specification, for which he was sentenced to fifteen years to life with an additional three years of actual incarceration for the firearm specification.

Appellant had a stormy relationship with Angela Ratliff, who was either his girlfriend or common-law wife. Appellant occasionally threatened to kill Ratliff, but had never acted on those threats. In late March 1991, appellant and Ratliff had a fight and separated.

On the afternoon of March 31, 1991, appellant purchased cartridges for a handgun that he had purchased a few days earlier in a Middletown bar. According to several witnesses, appellant purchased the weapon after Ratliff's parents "put out a contract on appellant's life" through a local motorcycle gang. Upon purchasing the ammunition, appellant and a friend went to a wooded area near Hamilton where appellant practiced shooting the handgun. Appellant and two other friends then spent the remainder of the day and evening drinking at several Hamilton bars. Later that night, appellant had one of his friends drive him to Ratliff's apartment.

Appellant testified that he knocked on the door of Ratliff's apartment, but received no answer. Appellant then went to a bedroom window and looked in, whereupon he saw Ratliff having sex with the victim, Darrell Harris. Appellant went back and attempted to kick open the front door. He then returned to the bedroom window and "dove" through it onto the bed, from where he saw Ratliff and Harris heading down the hallway. Ratliff ran out the front door and appellant walked down the hallway into the living room.

According to appellant, Harris suddenly came at appellant from the kitchen with his head down and swinging his arms "with what appeared to be a knife." Appellant went for his handgun because Harris screamed he would kill appellant and appellant "didn't know what was going to happen." Appellant testified that Harris collided with him and as the two men struggled, appellant "accidentally" shot Harris once in the head, fatally wounding him. Appellant denied that he intended to kill or even shoot Harris. Police later recovered a closed pocket knife from behind a couch in the living room. There was testimony, however, that Ratliff slept on the couch earlier that week following one of appellant's threats and placed the knife there for her protection.

Ratliff testified that she and Harris were in bed and got up to investigate after hearing a noise outside the apartment. As they were in the kitchen, Ratliff heard the sound of a window breaking. She then ran out of her

apartment and upstairs to the manager's unit. On her way up the stairs, Ratliff "heard [appellant's] voice and * * * a loud noise and * * * heard [Harris] scream."

Amy Johnston, a thirteen-year-old acquaintance who baby-sat Ratliff's two sons on March 31 and spent the evening at Ratliff's apartment, testified that she was asleep on the living room couch when appellant woke her, pointed a gun at her, and told the girl, "if you don't want [to be] hurt, tell me where Angie is." Johnston became so frightened that she fainted and was subsequently revived at the scene by police. Appellant denied that he woke the Johnston girl and claimed he was unaware of her presence in the apartment.

The grand jury indicted appellant on one count of aggravated murder with a firearm specification and an additional specification charging appellant with committing the homicide while committing aggravated burglary. Appellant was also indicted on one count of aggravated burglary with a firearm specification. Appellant requested jury instructions on the lesser offenses of murder, voluntary manslaughter, involuntary manslaughter and negligent homicide. The trial court refused to instruct on both voluntary and involuntary manslaughter and asked defense counsel to express his preference for one or the other. Counsel indicated his belief that the evidence more closely resembled involuntary manslaughter and the trial court proceeded with an instruction on that lesser offense. The jury found appellant not guilty of aggravated murder but guilty of the lesser included offense of murder. The jury returned a finding of not guilty on the aggravated burglary charge.

On appeal, appellant submits the following two assignments of error for review:

Assignment of Error No. 1:

"The trial court erred to the prejudice of defendant-appellant when it refused to provide jury instructions of [sic] the lesser included offense of voluntary manslaughter."

Assignment of Error No. 2:

"The trial court erred to the prejudice of defendant-appellant when it refused to allow counsel to impeach a witness through extrinsic evidence."

In his first assignment of error, appellant claims the trial court erred by refusing to instruct the jury on the lesser offense of voluntary manslaughter when the evidence clearly warranted such an instruction. It is appellant's position that in an aggravated murder case where the defendant discovers his or her spouse in the act of adultery, the accused is entitled to a jury instruction on voluntary manslaughter.

Following the presentation of evidence, appellant requested jury instructions on both voluntary and involuntary manslaughter. The court and counsel had a lengthy discussion on the issue of jury instructions as follows:

"[THE COURT:] Let's talk about lesser included. Right now as I have indicated, obviously the Court intends to read aggravated murder with specifications and murder with specifications too. The question then becomes—The first question is do we consider voluntary manslaughter.

"MR. SHANKS [defense counsel]: Your honor, I believe that there has been sufficient evidence from both sides of the case to ask for and to give to the jury a lesser included instruction on both voluntary manslaughter and involuntary manslaughter and also negligent homicide, but as to the issue as to voluntary manslaughter, we believe that there is reason to charge that as well as involuntary manslaughter.

"* * * *

"The significant difference between voluntary manslaughter and aggravated murder is not whether or not the victim anticipated it or charged it whatever, but the mental culpability of the offender is lessened and I think that that's the issue the jury has to reason out and the standard legal response is this. That is how the section is read. The law provides that any doubt should be given to the benefit of the Defendant in my opinion.

"THE COURT: But you have to present sufficient evidence to justify giving the instruction.

"MR. SHANKS: Yes, sir, and all I can say is I believe there has been and that's where the Court has the judgment call.

"* * * *

"THE COURT: I mean that's the whole point. I mean we're talking about lesser included and now you come to the fork in the road and do you choose the fork of involuntary or voluntary?

"MR. SHANKS: I'll leave that to your judicial wisdom.

"THE COURT: Well, you tell me what you want.

"MR. SHANKS: Do I get to pick which one I want?

"THE COURT: No, but I want to know what your preferences are.

"MR. SHANKS: I think both of them require consideration, Your Honor. I think the facts more closely fit involuntary manslaughter. I would still argue that it is very difficult to give the charge either way. I am not trying to duck the issue, but—

"THE COURT: Yes, you are.

"MR. SHANKS: Well, because that's my obligation to do so.

" * * *

"Well, I think the concern is that just because involuntary manslaughter may not be a lesser included charge as voluntary manslaughter it doesn't mean the jury can't consider there's evidence of both. I will represent to the court that if I will accept the charge of the lesser included of murder, involuntary manslaughter, and negligent homicide, but if the court doesn't feel that involuntary manslaughter is sufficient under the facts, I would just ask the court to consider that there has been insufficient facts to charge on voluntary manslaughter.

"THE COURT: Well, that's what I—that's what I want you to let me know. You want murder—aggravated murder, murder, involuntary manslaughter, and negligent homicide?

"MR. SHANKS: No, I don't want aggravated murder, but—

"THE COURT: I understand you don't want that, but—

"MR. SHANKS: But, I would like the lesser included on murder, involuntary manslaughter, and negligent homicide.

"THE COURT: You'll get it.

" * * *

"And if I change my mind, I'll let you know in the morning.

"MR. SHANKS: I just—

"THE COURT: I mean—You know, I'm still not settled about it.

"MR. SHANKS: I appreciate that. I'll be flexible. I will assume that that's what it will be unless I hear differently."

At the close of the discussion, the trial court indicated it would instruct the jury on either voluntary or involuntary manslaughter, but not both, and asked defense counsel which charge he preferred. Counsel at first declined, but ultimately acquiesced and expressed a preference for an instruction on involuntary manslaughter.

Before considering the merits of the first assignment, we first address the state's contention that appellant did not object to the court's failure to instruct on voluntary manslaughter and that the court's failure to do so must be plain error to warrant a reversal. Crim.R. 30(A) provides that a party may not assign as error the failure to give a jury instruction unless the party objects thereto before the jury retires to consider its verdict, specifically stating the matter and grounds of the objection. Appellant did not specifically object to the court's failure to instruct the jury on voluntary manslaughter. Consequently, the state argues, appellant's failure to object constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of

the trial clearly would have been otherwise. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332.

The Ohio Supreme Court recently held that:

"[I]n a criminal case, where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto." *State v. Wolons* (1989), 44 Ohio St.3d 64, 67, 541 N.E.2d 443, 446.

As previously noted, the court and counsel engaged in a lengthy discussion on the subject of appellant's requested instruction on voluntary manslaughter. Appellant's counsel presented his argument to the trial court and applied the relevant law to the facts of the case in support of his claim that the jury should be instructed on both voluntary and involuntary manslaughter. Although counsel eventually acceded to the court's request and opted for an instruction on involuntary manslaughter, appellant did not waive his objection by failing to specifically object on the record at the close of jury instructions since the court understood appellant's objections. *Wolons, supra.* We therefore find that this assignment has been properly preserved for appeal and is not subject to plain error analysis.

There is no question that involuntary manslaughter may be a lesser included offense of aggravated murder. *State v. Thomas* (1988), 40 Ohio St.3d 213, 215, 533 N.E.2d 286, 288. On the other hand, voluntary manslaughter, although not a lesser included offense, is an inferior degree of aggravated murder and murder since "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements * * *." *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 592, quoting *State v. Deem* (1988), 40 Ohio St.3d 205, 209, 533 N.E.2d 294, 298. The element of provocation mitigates the offender's culpability. *Tyler, supra.*

Thus, even though voluntary manslaughter is not a lesser included offense of aggravated murder or murder, the test for whether a judge should give a jury instruction on voluntary manslaughter where a defendant is charged with the more serious crime is the same test to be applied as when an instruction on a lesser included offense is sought. *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272, 274. In other words, an instruction on an inferior degree offense must be given if, under any reasonable view of the evidence, it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser or inferior offense. *Id.; State v. Huertas* (1990), 51 Ohio St.3d 22, 31–32, 553 N.E.2d 1058, 1068–1069. A jury

must find a defendant guilty of voluntary manslaughter rather than murder if the prosecution proves, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant establishes, by a preponderance of the evidence, the existence of a mitigating circumstance. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 617, 590 N.E.2d 261, 263.

■ The trial court and counsel proceeded on the incorrect assumption that voluntary manslaughter is a lesser included offense of aggravated murder. As noted, voluntary manslaughter is an inferior degree of aggravated murder. Nevertheless, the trial court employed the correct test in determining whether to instruct the jury on voluntary manslaughter, since the same test is used for inferior degree offenses as is used for lesser included offenses. Accordingly, we must decide whether the trial court should have instructed the jury on the inferior degree offense of voluntary manslaughter in addition to the lesser included offense of involuntary manslaughter.[1]

■ "Voluntary manslaughter" is defined in R.C. 2903.03(A) in the following terms: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." The statute defines "voluntary manslaughter" as a single offense that, under certain circumstances, permits the defendant to mitigate a charge of aggravated murder or murder to manslaughter. *Rhodes, supra*, 63 Ohio St.3d at 617, 590 N.E.2d at 263. The crime comprises elements that the state must prove as well as mitigating circumstances that must be established by the defendant. The mitigating circumstances are (1) sudden passion in response to serious provocation by the victim sufficient to incite the defendant to use deadly force, and (2) a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force. *Id.*

■ Under the statute, a jury must find the accused guilty of voluntary manslaughter rather than the more serious offense of murder or aggravated murder if the prosecution has proven, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant has established by a preponderance of the evidence the existence of one or both of the mitigating circumstances. *Id.* Thus, a defendant on trial for murder or

---

1. In *Rhodes, supra*, the defendant was indicted for murder and the trial court instructed the jury on murder, voluntary manslaughter and involuntary manslaughter. Although the question of whether it was proper to instruct the jury on both voluntary and involuntary manslaughter was never raised, the multiple instructions must have caused some confusion, since the jury, at one point during its deliberations, requested a clarification between the various offenses.

aggravated murder who produces sufficient evidence of one or both of the mitigating circumstances is entitled to an instruction on voluntary manslaughter if under any reasonable view of the evidence, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances. *Id.*

■ An inquiry into the mitigating circumstances requires a determination of whether there has been serious provocation by the victim. Serious provocation involves both objective and subjective components. *Shane, supra,* 63 Ohio St.3d at 634, 590 N.E.2d at 276. In determining whether the provocation is reasonably sufficient to bring on a sudden passion or a fit of rage, an objective standard is applied, *i.e.,* there must have been a reasonable provocation, and a reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow. *Id.*

Appellant contends that his discovery of his common-law wife in the act of adultery is sufficient evidence of "serious provocation" and entitles him to an instruction on voluntary manslaughter. As the court observed in *Shane,* 63 Ohio St.3d at 635, 590 N.E.2d at 277: "There are certain types of situations that have been regarded as particularly appropriate cases in which voluntary manslaughter instructions are often given when murder charges are brought. For example, * * * discovering a spouse in the act of adultery [is one] of the classic voluntary manslaughter situations." However, the *Shane* court was not faced with such a "classic situation" and refused to " * * * comment on the appropriateness of a voluntary manslaughter instruction in a murder prosecution involving one of those categories of cases." *Id.*

Although decisions from several other jurisdictions have been cited, the parties have not cited a single Ohio decision that stands for the proposition that a voluntary manslaughter instruction should always be given in a murder or aggravated murder case where the accused discovers his or her spouse in the act of adultery. This is not to say that such a situation has never arisen in Ohio or that a voluntary manslaughter instruction has not or should not be given under these circumstances. It would simply appear that the topic has never been the subject of a reported decision in Ohio.

■ Although the case at bar may be a "classic" voluntary manslaughter situation and—despite the paucity of Ohio case law on the subject—would call for a voluntary manslaughter instruction on a purely objective basis, we must still determine whether there was sufficient evidence of the subjective components of serious provocation. In addition to the objective factors, a defendant must show the following subjective factors before a voluntary manslaughter instruction will be given: (1) the defendant must have been in fact provoked,

and (2) the defendant must not in fact have cooled off during the interval of time between the provocation and the delivery of the fatal blow. *Shane, supra*, 63 Ohio St.3d at 634, 590 N.E.2d at 276.

Appellant testified that when he saw Ratliff and Harris having sex, "it felt like my whole life just raced in front of me. I just crumbled." Appellant ran back to the front door and then ran back to the bedroom where he dove through the window. At that point, however, appellant *walked* down the hallway into the living room and claimed that Harris aggressively came at appellant, stating he was going to kill appellant. Appellant further testified that he did not intend to shoot Harris, that the shooting was an accident, and that he would never intentionally shoot anyone. After shooting Harris, appellant "started running around in circles" before leaving the apartment.

A defendant on trial for aggravated murder bears the burden of showing, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation by the victim that was reasonably sufficient to incite the defendant into using deadly force. *Rhodes, supra*, 63 Ohio St.3d at 620, 590 N.E.2d at 265. While appellant may have produced sufficient objective evidence to justify a jury instruction on involuntary manslaughter, a lesser included or inferior degree offense instruction is not always required simply because there is "some evidence" going to the lesser offense. *Shane*, 63 Ohio St.3d at 633, 590 N.E.2d at 275. Based upon his own testimony, it is questionable whether appellant was sufficiently provoked or, if so, whether he "cooled off" between the provocation and the delivery of the fatal blow. After entering the apartment, appellant walked after Ratliff and Harris; he did not run after them. Appellant claimed that Harris made an aggressive move towards appellant, that the shooting was accidental, and that he never intended to kill or even shoot Harris. This evidence would suggest that from a subjective standpoint, appellant did not present the requisite reasonably sufficient evidence of provocation in order to merit a jury instruction on voluntary manslaughter.

Finally, we believe it is inappropriate for the trial court to place a defendant in the position where he or she must choose between lesser included or inferior degree offenses. It is not the accused's responsibility to select those lesser included or inferior degree offenses that will be submitted to the jury. The defendant may request that such instructions be given to the jury. It is the duty of the trial court to determine whether the evidence presented warrants a jury instruction on a particular lesser included or inferior degree offense. However, since we conclude that the evidence of provocation was not reasonably sufficient and that no reasonable jury could have found

appellant not guilty of the greater offense, but guilty of voluntary manslaughter, the trial court's failure to instruct the jury on voluntary manslaughter was not erroneous. Accordingly, the first assignment of error is overruled.

In his second assignment of error, appellant claims the trial court erroneously prohibited defense counsel from impeaching Ratliff through the use of extrinsic evidence. On cross-examination, Ratliff denied that she told Linda Asher that she heard Harris and appellant fight over the gun. When Asher later testified for the state, defense counsel attempted to impeach Ratliff's denial by asking Asher if Ratliff ever told her that she heard Harris and appellant wrestling for the gun. The trial court upheld the state's objection based upon its incorrect recollection that Ratliff denied telling anyone she heard a struggle or fight over the gun.

Appellant claims that Evid.R. 613(B) permits him to introduce extrinsic evidence of Ratliff's prior inconsistent statement since Ratliff was given an opportunity to explain or deny her prior statement and the state had the opportunity to question Ratliff on redirect examination with respect to this issue.

Ratliff was not present in the apartment when appellant shot Harris. Both Ratliff and appellant testified that she ran out of the apartment as soon as appellant came through the bedroom window. Furthermore, it has not been explained how Ratliff could have "heard" a struggle over a firearm. The trial court admittedly erred when it found that Ratliff denied telling anyone she heard the two men fight over the gun. Even if the trial court would have correctly found that appellant presented a proper foundation to admit Ratliff's prior inconsistent statement, the statement was collateral to the issue being tried and pertinent only with respect to Ratliff's credibility. Under such circumstances, the trial court's refusal to admit evidence of a prior inconsistent statement must constitute an abuse of discretion to warrant reversal. *State v. Riggins* (1986), 35 Ohio App.3d 1, 519 N.E.2d 397. Since the evidence was only relevant to a collateral issue, we find no abuse of discretion. In the alternative, any error arising from the court's decision to prohibit the introduction of the extrinsic evidence of Ratliff's prior inconsistent statement is harmless error. Crim.R. 52(A). For this reason, the second assignment of error is overruled.

*Judgment affirmed.*

KOEHLER and WALSH, JJ., concur.