OPINION
Defendant-appellant, Lewis R. Patterson, appeals his conviction in the Butler County Court of Common Pleas, for murder, with a firearm specification. We affirm the conviction.
In the early morning hours of July 9, 2000, Donny Downward and another, unidentified male, approached Eric Black (a.k.a. "Pokeman"), and asked him where they could get some "dope." Black got into the pickup that Downward was driving, and directed the two men to an apartment complex on Beckett Drive, in Hamilton, Ohio. They stopped at 1108 Beckett Drive, and Black exited the truck. He approached appellant, who was outside the apartment. Black called out to appellant that he "needed thirty," or $30 worth of crack cocaine. Appellant handed Black the cocaine, told him that he had a gun, and stated, "don't let these guys pull off with my dope or I'm going to shoot that mother fucking truck up."
Black returned to the truck. Downward and the other man were apparently unsatisfied with the drugs, and asked for more. Black indicated to them that he couldn't do any better, and that appellant had a gun. Downward stated that he "don't care nothing about nobody with no gun," and lifted his shirt to display multiple gunshot and stab wounds. As the three argued over the purchase of the drugs, Downward started the pickup and began to pull away. Four shots rang out. At first, Black took cover and the unidentified man fled. When Black looked up, he observed appellant walking away and putting something in his pants. Then Black fled the scene as well. Downward, having been hit by two gunshots to his head, died.
Laveda Jones observed the shooting. Although she did not immediately inform the police that she witnessed the shooting, she sought out the police the following day and told them what she had seen. She lived at 1110 Beckett Drive, and had been appellant's neighbor for about a year. The night of the shooting, she was sitting outside her apartment with appellant and Sharelle Walton, appellant's girlfriend, when a truck pulled into the parking lot. A man known to Jones as Pokemon got out of the truck and approached appellant. She observed appellant hand Pokemon something which he carried back to the truck. She saw the driver shake his head as if he didn't want it. Pokemon yelled to appellant that "they was trying to run off with his stuff." Jones then observed appellant enter the apartment at 1108 Beckett Drive and re-emerge with a gun. She saw appellant walk over to the truck and begin shooting into the driver's side window. She saw Pokemon and the other passenger run away, and watched as appellant returned to his apartment.
Walton's niece, Shamicaa Benson, was staying at the home of appellant and Walton that night. Sometime during the night, she was wakened by what she thought were firecrackers. Shortly thereafter, Walton came to her room, crying, and told her that appellant had shot someone. A little later, appellant came to her and asked her to "hide the guns," which she refused to do.
The shots had also attracted the attention of a neighbor, Tracy Dillingham. In the moments following the shots, Dillingham observed a white male in a bandana running away from the parked truck, and appellant walking away in the opposite direction. She also saw a blue vehicle, which could have been a Buick, leaving the apartment complex parking lot in haste. She called 911 and informed the dispatcher of what she had observed.
City of Hamilton police officers were summoned to the 1100 block of Beckett Drive by a report of gunshots. Officer Carole Walters of the Hamilton Police Department was the first officer to arrive at the scene. She found Downward slumped over the passenger seat of the truck. His head was bleeding. He was transported to a hospital where he was pronounced dead. An autopsy revealed that he had bled to death as a result of two gunshot wounds to the head.
Upon receiving Jones' statement, Hamilton police obtained a warrant to search appellant's home. There they found different caliber ammunitions and a holster. Appellant was subsequently arrested and indicted for Downward's murder. While in custody, appellant made statements to fellow inmate, Anthony Thomas, that he had shot Downward because Downward had stolen drugs from him the previous night. He made similar statements to Black while they were seated in the courtroom together awaiting arraignment.
After a trial at which the foregoing evidence and testimony was presented, a jury returned a guilty verdict against appellant for murder with a gun specification. Appellant was sentenced accordingly. He appeals his conviction, raising nine assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING HIS MOTION TO SUPPRESS EVIDENCE OF A WITNESS'S IDENTIFICATION OF DEFENDANT FROM A POLICE PHOTOGRAPH.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. Statev. Retherford (1994), 93 Ohio App.3d 586, 592. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688, 691.
The relevant facts are not in dispute. The day after the murder, Laveda Jones sought out the police. Of her own initiative, she told the police that she saw appellant shoot into Downward's truck. In recalling the events, she identified appellant by his name, Lewis Patterson. After providing this name, Jones was presented with a police photograph of appellant. When asked if the photograph depicted the Lewis Patterson she had identified as a suspect, she responded, "yes, that's him."
Appellant moved to have this identification suppressed, arguing that it was unduly suggestive. The trial court denied the motion. On appeal, appellant contends that the identification was so suggestive that it was inherently unreliable and should have been suppressed by the trial court.
To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was unreliable under the totality of the circumstances and "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers (1972), 409 U.S. 188, 199,93 S.Ct. 375, 382. In most circumstances, a confrontation is unnecessarily or unduly suggestive when the witness has been shown but one subject. Mansonv. Brathwaite (1977), 432 U.S. 98, 115, 97 S.Ct. 2243, 2253.
However, even when a confrontation is unnecessarily or unduly suggestive, the identification testimony derived from the confrontation is not inadmissible solely for that reason. Rather, reliability of the testimony is the linchpin in determining its admissibility. Id.;Biggers at 115, 97 S.Ct. at 2253. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process. Biggers at 115, 97 S.Ct. at 2253.
Reliability is determined from the totality of the circumstances.Brathwaite at 114, 97 S.Ct. at 2253, citing Stovall v. Denno (1967),388 U.S. 293, 87 S.Ct. 1967. These circumstances include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. Brathwaite at 114, 97 S.Ct. at 2253.
In the present case, Jones had been acquainted with appellant for one year. She had spent the twenty minutes prior to the crime sitting outside, conversing with appellant and Walton. Jones had ample opportunity to observe appellant during the commission of the crime. She was certain and unequivocal about her identification of appellant, which was based on her previous contact with appellant, as well as her observation of the crime. Under these circumstances, Jones' identification of appellant was sufficiently reliable, in spite of the suggestive nature of the photo identification. Accordingly, the trial court did not err by denying appellant's motion to suppress the evidence. The assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT TO ALLOW A WITNESS TO TESTIFY TO HER IDENTIFICATION OF A POLICE PHOTOGRAPH OF APPELLANT AND TO ALLOW ADMISSION OF THE PHOTOGRAPH ITSELF INTO EVIDENCE AS WELL.
As stated in our resolution of appellant's first assignment of error, Jones' identification of appellant was sufficiently reliable in spite of its apparently suggestive nature. Accordingly, there was no error in allowing Jones to testify regarding her identification of appellant. We likewise find no error in the admission of the police photograph into evidence.
Appellant contends that admission of the police photograph into evidence impermissibly presented the jury with evidence of his prior criminal activity. Evid.R. 404(B) prohibits the introduction of evidence of other crimes, wrongs or acts to prove the character of a person in order to show that he acted in conformity therewith. Consequently, "[e]vidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." State v. Woodard (1993),68 Ohio St.3d 70, 73.
However, police, or "mug-shot," photographs may be admissible if they do not provide a trier of fact with the reasonable inference that the accused has had prior criminal involvement. See State v. Wilkinson
(1971), 26 Ohio St.2d 185, 187. In the present case, the police photograph would not have created a reasonable inference of defendant's prior criminal involvement because the State removed the identification markings placed on the photograph by the police before offering the photograph into evidence. See State v. Wills (1997), 120 Ohio App.3d 320,326; State v. Wilkinson. Accordingly, the assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT TO ALLOW TESTIMONY FROM INMATES AS TO INCRIMINATING STATEMENTS MADE BY APPELLANT WHILE IN CUSTODY.
Eric Black and appellant's fellow inmate, Anthony Thomas, each testified at trial that appellant admitted to him that he had shot Downward. Thomas further testified that appellant told him he killed Downward for his attempt to steal drugs. In his third assignment of error, appellant contends that there is "adequate circumstantial evidence to support that the inmates were acting as agents of the state." This circumstantial evidence consists of Thomas's testimony that he offered to testify in appellant's trial in exchange for leniency, and the assertion that Black's trial date was "inexplicably" continued to a date after appellant's trial.
Appellant concedes that he was unable to support this assertion at the suppression hearing or at trial with any direct evidence. In fact, a review of the record indicates that appellant did not even raise this issue at the suppression hearing, nor did he object to the testimony during trial.
Crim.R. 12(B) addresses the timing and necessity of filing pretrial motions. Specifically, the rule provides:
 Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
* * *
 (3) Motions to suppress evidence, including but not limited to statements and identification testimony on the ground that it was illegally obtained.
Crim.R. 12(B)(3) (emphasis added). The failure to raise objections that must be made prior to trial "shall constitute waiver thereof." Accordingly, appellant's failure to move for suppression of his statements under Crim.R. 12(B)(3) constitutes a waiver of that objection. See Crim.R. 12(G); State v. Sibert (1994), 98 Ohio App.3d 412,429-30. The assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN NOT INSTRUCTING THE JURY THAT THE JURY VIEW OF THE SCENE WAS NOT A CRUCIAL STEP OR STAGE IN THE TRIAL.
In his fourth assignment of error, appellant contends that the trial court's failure to instruct the jury that the view was not a "crucial stage of the proceedings," was prejudicial error.
Pursuant to Crim.R. 30(A), "a party may not assign as error the giving or the failure to give any instructions unless the party objects * * * stating specifically the matter objected to and the grounds of the objection." The failure to object to a jury instruction before the jury retires in accordance with Crim.R. 30(A) constitutes a waiver, absent plain error. State v. Williford (1990), 49 Ohio St.3d 247, 251.
The record is devoid of a specific objection to the above instruction. While defense counsel lodged a general objection to the provision of preliminary instructions to the jury, no objection was made to the cautionary instruction as given, nor any objection made related to the instruction at the conclusion of the trial. Since there was no specific objection to the jury instructions, appellant has waived all but plain error with respect to the instructions in question.
Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A plain error within the meaning of Crim.R. 52(B) is "an obvious error that is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." State v. Bowman (2001),144 Ohio App.3d 179, 190, citing State v. Craft (1977), 52 Ohio App.2d 1,7. Under a plain error analysis it must be clear from the record that an error was committed and, except for the error, the result of the trial clearly would have been otherwise. Id., citing State v. Bock (1984),16 Ohio App.3d 146, 150. The plain error rule must be applied with the utmost caution and invoked only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Cooperrider (1983),4 Ohio St.3d 226.
The trial court gave the jury the following cautionary instruction, before the jury departed to view the scene of the crime:
 Now, with respect to the jury view, ladies and gentlemen. You're gonna be taken to the location — involved in this case. You will remain there, together, under the supervision of the Court's bailiff, Mr. Lunsford, until you return to the Courtroom.
 Counsel for the parties may accompany you. But they may not discuss this case, or demonstrate anything relating to it. Mr. Lunsford may call to your attention objects requested by counsel, or locations requested by counsel. Counsel will make their requests before they leave the building.
 Ladies and gentlemen, what you observe outside of this Courtroom is not evidence. Conditions may have changed since the time of the events in this case. The evidence of the physical appearance of the scene must come to you from the witness stand. The only purpose of your visit is to help you understand the evidence as it is presented in the Courtroom.
Upon review of the record, we conclude that the trial court's failure to instruct the jury that the view was not a "crucial stage of the proceeding" does not constitute plain error. Generally, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged. State v. Adams (1980),62 Ohio St.2d 151, 153. However, the procedural concept that a jury view is not a "crucial stage" of the proceeding is not a matter with which the jury, as fact-finder, is concerned. The trial court appropriately instructed the jury that the only purpose of the view was to assist them in understanding the evidence which would be presented, and had no evidentiary value in and of itself. The assignment of error is overruled.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN INSTRUCTING THE JURY BEFORE THE BEGINNING OF TRIAL AS TO THE DEFINITION OF MURDER WITHOUT ALSO DEFINING POSSIBLE LESSER INCLUDED OFFENSES.
Criminal Rule 30(B) provides that the trial court, at the commencement of trial, "may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury[.]" Construing this rule, the Ohio Supreme Court has stated that "[b]efore the taking of evidence, a trial court may give preliminary instructions to the jury appropriate for the jury's guidance in hearing the case." State v. Comen (1990),50 Ohio St.3d 206, 209. Such preliminary instructions "prepare the jury for trial providing orientation so the jury is properly informed as to its duties and responsibilities." Id.
In accordance with Crim.R. 30(B), the trial court provided the jury with the following instruction, prior to the commencement of the trial:
 The defendant is charged with murder. Before you can find the defendant guilty of murder, you must find beyond a reasonable doubt that on or about the 9th of July 2000 and in Butler County, Ohio, the defendant purposely caused the death of another.
 Purpose to cause death is an essential element of the crime of murder. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant, a specific intention to cause the death of Donald Lee Downard.
* * *
 Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result.
 To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.
 The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the facts and circumstances in evidence.
 The defendant is presumed to be innocent unless and until the State proves his guilt beyond a reasonable doubt.
 Reasonable doubt is present when, after you have carefully considered and compared all the evidence — you cannot say that you are firmly convinced of the truth of the charge. Reasonable doubt is doubt based upon reason and common sense. Reasonable doubt is not mere possible doubt because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.
 Proof beyond a reasonable doubt is proof of such a character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.
At trial, defense counsel objected to the instruction, arguing that the trial court should have provided the jury with an instruction on possible lesser included offenses. In this assignment of error, appellant first contends that the preliminary jury instructions were incomplete as the trial court failed to instruct the jury on possible lesser included offenses.
An instruction on a lesser included offense is required only if the evidence at trial would reasonably support both an acquittal on the greater crime charged and a conviction on the lesser included offense.State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. Logic dictates that, before the presentation of evidence, the trial court would be unable to determine whether an instruction on a lesser included offense would be warranted by the evidence. Accordingly, the trial court, when providing the jury with preliminary instructions, is not required to instruct the jury on any possible lesser included offenses. See, e.g., Williford, 49 Ohio St.3d at 251.
Appellant further contends that the instruction is deficient because it fails to inform the jury "that the `establishment' of purpose must be proved by the State beyond a reasonable doubt." However, appellant failed to lodge this specific objection at trial. Since there was no specific objection to the jury instruction, appellant has waived all but plain error with respect to the instruction in question. See Williford,49 Ohio St.3d at 251.
We find that the instruction does not constitute plain error. The instruction informs the jury that the state bears the burden of proving appellant's guilt beyond a reasonable doubt. The instructions, read as a whole, are sufficient to inform the jury that the state bore the burden of proof as to all the essential elements of the offense. Accord Statev. Price (1979), 60 Ohio St.2d 136.
The assignment of error is overruled.
Assignment of Error No. 6:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT TO ALLOW THE PROSECUTION TO REFER IN OPENING STATEMENT, AND TO INTRODUCE EVIDENCE THAT, APPELLANT AND THE VICTIM HAD ENGAGED IN A DRUG TRANSACTION BEFORE THE MORNING OF THE SHOOTING WITHOUT GIVING THE JURY A CAUTIONARY INSTRUCTION AS TO THE LIMITED USE TO WHICH THEY WERE TO PUT THE EVIDENCE.
Although this assignment of error is partially couched in terms which suggest that appellant alleges prosecutorial misconduct, in fact, the only contention argued by appellant in his appellate brief is that evidence of his prior drug dealing with the victim should have been excluded by Evid.R. 403(A).
At trial, the state called Anthony Thomas to testify. Thomas had been incarcerated with appellant at the Preble County jail. Thomas testified that appellant made statements to him, indicating that appellant shot Downward because of a previous drug transaction in which Downward stole drugs from him.
Appellant concedes that this testimony was relevant, and admissible under Evid.R. 404(B), in order to prove motive. However, appellant argues that the evidence should have been excluded under Evid.R. 403(A), due to its prejudicial nature. We disagree.
Evid.R. 404(B) prohibits the admission of other acts evidence to prove the character of a person in order to show that the person acted in conformity with the evidence. The rule provides, however, for an exception when the prosecution seeks to introduce evidence of other bad acts, not to show the accused's character or his criminal propensity, but to establish circumstantially either an element of the crime or a material fact at issue. Specifically, Evid.R. 404(B) allows the introduction of evidence of "other crimes, wrongs, or acts" when that evidence is used as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." This principle is further embodied in R.C. 2945.59, which provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant[,] which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evidence should not be admitted as an exception to Evid.R. 404(B) unless the matter concerned is genuinely a material issue. State v.Smith (1992), 84 Ohio App.3d 647. As with any other type of evidence, admission of other acts testimony must not only meet the prerequisites of Evid.R. 404(B), but it must also pass muster under Evid.R. 403(A) which requires the exclusion of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice[.]" The admission or exclusion of evidence, including other acts evidence, lies in the trial court's sound discretion. State v. Bey (1999),85 Ohio St.3d 487, 489-490.
In the present case, we find that the trial court did not abuse its discretion by allowing testimony regarding appellant's activities in drug transactions. The evidence was admissible to demonstrate motive, i.e., that the defendant killed the victim to avenge theft of drug money. The testimony underpins the prosecution's theory of appellant's motive for the crime with which he was charged, and plainly it was not offered to demonstrate his propensity for criminal activity. Accord State v. Bobo
(1989), 65 Ohio App.3d 685; State v. Hill (1987), 37 Ohio App.3d 72 . As such, the probative value of the evidence was not outweighed by its prejudicial nature.
Appellant also contends that the trial court's failure to instruct the jury, sua sponte, that the evidence was admitted only for a limited purpose, constitutes reversible error. Appellant failed to request such an instruction at trial, and therefore has waived any error with respect to this issue, except for plain error. State v. Grant (1993),67 Ohio St.3d 465, 472.
We do not find that the failure to provide a cautionary instruction constitutes plain error. See id. The absence of such an instruction made no difference in the jury's verdict as nothing suggests that the jury used this evidence to convict the appellant on the theory that he was a "bad person." The assignment of error is overruled.
Assignment of Error No. 7:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT TO ALLOW ADMISSION OF PHOTOGRAPHS OF AMMUNITION AND A GUN HOLSTER OBTAINED FROM A SEARCH OF THE RESIDENCE OF APPELLANT'S GIRLFRIEND'S APARTMENT.
Appellant contends that the trial court erred in admitting testimony that he kept firearms at 1108 Beckett Drive, where he lived with his girlfriend, and evidence consisting of a holster and ammunition recovered in a search of the apartment. As well, appellant contends that the trial court erred in admitting testimony that either a revolver or semi-automatic handgun of the same caliber as that which fired the fatal bullets, could have fit in an empty holster obtained in a search of the apartment. Appellant contends that this evidence is irrelevant, and even if relevant, the trial court should have excluded it because its probative value was substantially outweighed by its prejudicial effect.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. Bey, 85 Ohio St.3d at 489-490. Absent an abuse of discretion and a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of relevant evidence. State v. Martin
(1985), 19 Ohio St.3d 122, 129. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Rivera
(1994), 99 Ohio App.3d 325, 328.
Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, all relevant evidence is admissible. Evid.R. 402. However, relevant evidence is not admissible where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403(A); Statev. Jurek (1989), 52 Ohio App.3d 30, 35.
We initially note that the evidence is relevant. It demonstrates that appellant had access to firearms, and thus has a tendency to make the existence of a fact of consequence, appellant's opportunity to commit the crime, more or less probable. The evidence is also relevant to the determination of whether a firearm was under appellant's control at the time of the murder, and relevant to corroborate Jones' testimony that appellant went into the apartment and retrieved a gun.
As well, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Appellant contends that the evidence permitted a prejudicial inference to be made by the jury: that appellant "was the sort of man to own and carry guns." While this inference may have been made by some members of the jury, it is certainly not an inflammatory inference given the remaining evidence against appellant. Because appellant was not unfairly prejudiced by the evidence, we find that the trial court did not abuse its discretion by permitting the testimony and evidence.
The assignment of error is overruled.
Assignment of Error No. 8:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT TO REFUSE TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF MANSLAUGHTER AND INVOLUNTARY MANSLAUGHTER.
Even though an offense may be statutorily defined as a lesser included offense of another, "a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Raglin (1998), 83 Ohio St.3d 253, 257, quoting State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. An instruction on the lesser included offense of involuntary manslaughter in a murder trial should be provided only when the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another.Id. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense. State v.Shane (1992), 63 Ohio St.3d 630, 632-33.
We find no evidence in this case which reasonably suggests that appellant lacked the purpose to kill his victim. The facts of this case are clear. Upon Downward's attempt to drive away without paying for the drugs that appellant provided him, appellant entered his girlfriend's apartment and retrieved a gun. He exited the apartment, approached Downward's truck, and fired four times into the passenger compartment. Two of the shots were aimed into Downward's head. Under no reasonable view of the events could the jury have found that appellant intended to shoot Downward, yet did not intend to cause his death.
The offense of voluntary manslaughter is considered an inferior degree, and not a lesser included offense, of aggravated murder because its elements are contained within aggravated murder except for one or more mitigating elements. State v. Cornett (1992), 82 Ohio App.3d 624,631, citing State v. Tyler, 50 Ohio St.3d 24, 36. However, the test for whether the trial court should give jury instructions on voluntary manslaughter is the same as the test for an instruction on a lesser included offense. Cornett at 631, citing State v. Shane (1992),63 Ohio St.3d 630, 632. A judge must give an instruction on an inferior degree offense if, "under any reasonable view of the evidence, it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the * * * inferior offense." Id.; Statev. Huertas (1990), 51 Ohio St.3d 22, 31-32.
A jury must find an accused guilty of voluntary manslaughter, and not aggravated murder, if the prosecution has shown beyond a reasonable doubt that the accused knowingly caused the victim's death and the accused has established by a preponderance of the evidence that there are one or more mitigating circumstances. Cornett at 632-633, citing State v. Rhodes
(1992), 63 Ohio St.3d 613, 617. The mitigating circumstances that must be established are sudden passion or a sudden fit of rage brought on by serious provocation by the victim sufficient to incite the defendant into using deadly force. R.C. 2303.03(A); Cornett at 632.
To determine whether the provocation by the victim was sufficient to bring on the defendant's sudden passion or rage, courts apply an objective as well as a subjective standard. Cornett at 632. Under the objective standard, courts must first ask whether there was reasonable provocation. "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Shane, 63 Ohio St.3d at 634-635. Second, the court must inquire as to whether a reasonable person who was provoked in that way would have cooled off in the time between the provocation and the killing. Id. Voluntary manslaughter requires that the requisite provocation be sudden. State v. Pierce, 64 Ohio St.2d 281, 284.
The provocation alleged by appellant is that he was enraged by Downward's second attempt to steal drugs from him, and Downward's statement that he had been shot before and "don't care nothing about nobody with no gun." Downward's foolhardy statement surely was not provocation to murder. Nor was his attempt to steal the drugs. See Statev. Smith (1991), 61 Ohio St.3d 284, 291. There is simply no evidence of any serious provocation that would arouse the passions of an ordinary person beyond his or her control. Thus, appellant has failed to meet even the objective standard of Shane in order to demonstrate reasonably sufficient provocation.
Accordingly, we find that the trial court properly denied the defendant's request for an instruction on the offenses of voluntary manslaughter and involuntary manslaughter. The assignment of error is overruled.
Assignment of Error No. 9:
 THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his final assignment of error, appellant contends that the jury's verdict is against the manifest weight of the evidence.
When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order for a court of appeals to reverse a judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. Id. at 389. In taking on this role,
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of the fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case. Id.
To support a murder conviction, the state must show that the accused purposely caused the death of another. R.C. 2903.02(A). One acts purposely "when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
Reviewing the record and weighing the evidence, we do not find that the jury lost its way or committed a manifest miscarriage of justice by finding appellant guilty of murder. The jury heard the testimony of an eyewitness, who saw appellant fire four shots into the victim's truck. Appellant's cellmate testified that appellant confessed the crime to him. The testimony of Black, a passenger in the victim's truck, also placed appellant at the scene of the crime, and identified appellant as Downward's killer. The jury was in the best position to determine the credibility of the witnesses and testimony. Upon an examination of the record, we find that the testimony and evidence provided substantial evidence upon which the jury could have reasonably found appellant guilty of murder beyond a reasonable doubt. We do not find that the conviction is against the manifest weight of the evidence, and therefore overrule the assignment of error.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.